**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CHARLES BROOKS,

                                  Plaintiff,

            - v -                                Civ. No. 9:14-CV-477
                                                       (TJM/RFT)

MICHAEL HOGAN, *Former OMH Comm'r*;
RICHARD MIRAGLIA*, Former OMH Associate Comm'r*;
DONALD SAWYER, *Former CNYPC Executive Director*;
JEFF NOWICKI; *Chief of Service CNYPC*;
ELIZABETH FARNUM, *Psychiatrist CNYPC*;
DR. TERRI MAXYMILLIAN, *Chief of Psychology CNYPC*;
ANTHONY GONZALEZ, *Director fo Risk Managment CNYPC*;
KYLE VELTE, *Former Psychologist CNYPC*;
LAURA CREASER SMITH, *Former Nurse CNYPC*;
CHARMAINE BILL, *Treatment Team Leader CNYPC*;
JENNIFER A. YEMMA, *Secure Care Treatment Assistant CNYPC*;
ANTONIA BELL, *Secure Care Treatment Assistant CNYPC*;
HANS KUNZ, *Former Secure Care Treatment Assistant CNYPC*;
DAVID PARRISH, *Securte Care Treatment Assistant CNYPC*;
JEROME ALLEN, *Secure Care Treatment Assistant CNYPC*;
NICHOLAS HOLLENBECK, *Secure Care Treatment Assistant CNYPC*;
DANIEL WIGGINTON, *Former Secure Care Treatment Assistant CNYPC*,

                                  Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

CHARLES BROOKS
Plaintiff, *Pro Se*
C26223
CNYPC
P.O. Box 300
Marcy, New York 13403


**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

## I.  INTRODUCTION

The Clerk has sent to the Court for review a civil rights Complaint filed by *pro se* Plaintiff

Charles Brooks.  Dkt. No. 1, Compl.[1]  Plaintiff is currently involuntarily civilly confined in Central

New York Psychiatric Center ("CNYPC") and has not paid the statutory filing fee.[2]  Plaintiff also

submitted a Motion for Leave to Proceed *In Forma Pauperis* ("IFP"), Dkt. No. 2, a Motion for a

Preliminary Injunction and Temporary Restraining Order, Dkt. No. 3, and a Motion to Appoint

Counsel, Dkt. No. 4.

## II.  DISCUSSION

### A.  IFP Application

Upon review of Plaintiff's IFP Application (Dkt. No. 2), the Court finds that Plaintiff has

demonstrated sufficient economic need and therefore **grants** his request to proceed with this action

IFP.

Having found that Plaintiff meets the financial criteria for commencing this action IFP, the

Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C.

§ 1915(e).

---

[1] In drafting his Complaint, Plaintiff utilized a *pro forma* complaint provided by this District to individuals seeking to pursue their rights under 42 U.S.C. § 1983.  Dkt. No. 1, Compl.  Plaintiff also attached to that form a typed Complaint and several Exhibits.  When citing to the Plaintiff's Complaint, the Court will refer to the page numbers automatically assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System, and, if practicable, will also refer to the paragraph numbers assigned by Plaintiff in his typed Complaint.

[2] Plaintiff states that he is no longer in the custody of the Department of Corrections and Community Supervision ("DOCCS"), and instead, upon completion of his prison term, was transferred to CNYPC custody pursuant to New York's Mental Hygiene Law Article 9 and then by Article 10.  Dkt. No.1, Compl. at p. 15.  Article 10, known as the Sex Offender Management and Treatment Act ("SOMTA"), created a statutory scheme for procedures to be followed with respect to convicted sex offenders that might require civil confinement or supervision following completion of their prison term.  *See generally* N.Y. MENTAL HYG. LAW Art. 10.

Section 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[3] Thus, even if a plaintiff meets the financial criteria to commence an action IFP, it is this Court's responsibility to determine whether Plaintiff may properly maintain the Complaint. *See id.*

In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

---

[3] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting FED. R.CIV.P. 8(a)(2)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotation marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed. App'x 102, 104 (2d Cir. 2009).

## B. Sufficiency of the Complaint

### 1. Facts

In connection with events that allegedly transpired at CNYPC following his arrival on or about October 18, 2008, Plaintiff has sued seventeen current and former CNYPC employees. *See generally* Compl. Throughout his tenure in CYNPC, Plaintiff made it known that he had not been convicted of a sexually violent offense and thus was improperly placed at CNYPC. *Id*. at p. 20 & 25. It is his belief that his indignant objection to his involuntary civil confinement led to a campaign by CNYPC employees to target him in various ways, including verbal threats and taunting about his criminal history, divulgence of his private information, failing to protect him from other residents, being placed in a seclusion room, and generally being subjected to psychological abuse. *Id*. at pp. 21-26. In liberally construing Plaintiff's pleading, the Court finds that the following facts are alleged in Plaintiff's Complaint.

In November 2009, while making his way toward the Unit-304 Dayroom, Plaintiff observed Defendants Jennifer Yemma, Antonia Bell, and Jerome Allen, who are each Secure Care Treatment Assistants ("SCTA"), in the hallway near the nurses' station reading out loud the contents of a

medical chart. *Id*. at p. 18, ¶ 37. At that time, the SCTAs were in the presence of residents and other CNYPC employees. *Id*. Plaintiff did not know whose medical charts were being read aloud, but nevertheless became agitated by what he was witnessing and loudly stated "your [sic] not suppose[d] to have someone's chart in the hallway; does the nurse know you have that chart?" *Id*. Defendant SCTA Yemma then "scurried" into the nurses' station with the chart, presumably to return it to its rightful place.

Thereafter, some time in early 2011, possibly February, Plaintiff learned from Dr. Aranda that parts of his medical file had been mixed in with another resident's file, who was also named Brooks, and there had been an inadvertent disclosure of Plaintiff's information to this other resident during that resident's psychiatric examination.[4] *Id*. at p. 19 & Ex. A. Upon learning about the mixed-up charts, Plaintiff believed that it was his medical chart that had been read aloud by the SCTAs in November 2009 and that in her rush to return the medical records, either SCTA Yemna or Bell[5] mixed up his chart with another resident's chart; based on this supposition, Plaintiff filed a complaint pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Compl. at pp. 19-20. It is not clear where or when he filed this complaint, but Plaintiff states that he sent copies of his HIPAA complaint to Defendants Anthony Gonzalez, Jeff Nowicki, Donald Sawyer, and Michael Hogan.[6] *Id*. at p. 19.

---

[4] Dr. Aranda is not named as a Defendant in this matter. Dr. Aranda memorialized his inadvertent disclosure of medical information in a letter, dated February 15, 2011. Compl., Ex. A.

[5] Initially, Plaintiff states that Defendant Yemna mixed up the charts, but later in his Complaint, he proclaims that Defendant Bell was the one who mixed up the charts in her "vigorous attempt not to get caught with the sheaf of chart notes." *Compare* Compl. at p. 18, ¶ 37 *with* Compl. at p. 19.

[6] Plaintiff asserts that Anthony Gonzalez is the Director of Risk Management at CNYPC; Jeff Nowicki is Chief of Service at CNYPC; Donald Sawyer is the Former CNYPC Executive Director; and Michael Hogan is the Former Commissioner of the Office of Mental Health. Compl. at pp. 30-31 & 32, at ¶¶ 46, 48, 49, & 52.

On January 8, 2012, while Plaintiff was seated at a table in the eating area with another resident, Defendant SCTA Jerome Allen shouted at Plaintiff to leave the other resident alone. *Id.* at p. 27. A verbal altercation ensued between Plaintiff and Allen, followed by Allen sending Plaintiff to the "Seclusion/Restraint room." *Id.* While being escorted to the Seclusion Room by Defendants Allen, Hans Kunz, and David Parrish, Allen demanded to know why Plaintiff included him in his HIPAA complaint. *Id.* Upon arrival at the Seclusion Room, Defendant Allen punched Plaintiff in the face and Defendants Kunz and Parrish tackled Plaintiff. *Id.* at p. 28. Plaintiff yelled for help, but none came. Instead, Defendant Nurse Laura Creaser-Smith watched the assault and then dropped a "Red Dot" phone. *Id.* Defendant SCTA Nicholas Hollenbeck arrived on the scene in response to the Red Dot call and placed his knee on Plaintiff's chest and then choked him. *Id.* The four SCTAs on site continued to hit Plaintiff repeatedly and called for a five-point restraint bed; even after being placed in the restraints, the assault on Plaintiff continued. *Id.* Plaintiff called out for help again and noticed Defendants Dr. Elizabeth Farnum and Nurse Creaser-Smith watching.

## 2. Statute of Limitations

In his Complaint, which was signed on April 18, 2014, Plaintiff recites various acts allegedly committed by CNYPC staff from 2009 to 2012. These acts run the gamut from unauthorized release of private medical and personal information, to creating a hostile environment through threats and harassing behavior, to subjecting Brooks to bouts in the Seclusion Room, all of which Brooks claims violated his constitutional rights. *See* Compl. at pp. 18-26. As noted above, it is Plaintiff's belief that all these instances stem from his vociferous objection to his involuntary confinement.

In § 1983 actions, the applicable statute of limitations is a state's "general or residual statute for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting

*Owens v. Okure*, 488 U.S. 235, 249-50 (1989)) (alterations omitted). In New York, a three-year statute of limitations applies for personal injury actions, and thus to § 1983 actions as well. *Id.*; *see also* N.Y.C.P.L.R. § 214(5). "While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues. The claim accrues when the plaintiff knows or has reason to know of the harm." *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (citation omitted).

Here, Plaintiff cannot pursue vindication of any civil rights violations purported to have occurred three years prior to the filing of this action. All of the complained acts, with the exception of the privacy violations, were known to Plaintiff at the time they allegedly occurred, and thus, the three-year statute of limitations has run on any claim that occurred more than three years prior to April 18, 2014.[7] Similarly, although in November 2009, Plaintiff may not have been aware that his private medical information had been compromised and disclosed, he became aware of such disclosures by February 2011 when Dr. Aranda revealed the mix-up to him, and thus, that claim, should a cognizable claim exist,[8] would also be barred. Although the statute of limitations is an affirmative defense, and must generally await a defense motion, dismissal is appropriate when the

---

[7] The Court notes that Brooks was not a prisoner at the time he filed this civil rights action, and the Court is unaware of what restrictions, if any, are in place at CNYPC that could affect his ability to mail legal documents at will. Notwithstanding, we give him the benefit of the prisoner mailbox rule, which holds that due to the unique difficulties faced by incarcerated *pro se* litigants, a prisoner's pleading is deemed to be properly filed at the time he hands the papers to the prison authorities for transmittal to the court, *Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir. 2001); it is presumed that a prisoner handed the pleading to the prison guard on the date he signed the complaint, *Garraway v. Broome Cnty., New York*, 2006 WL 931729, at *3-4 (N.D.N.Y. Apr. 7, 2006).

[8] A violation of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub.L. 104-191, 110 Stat. 1936, does not constitute a violation of a fundamental Constitutional right and therefore is not actionable under § 1983. *See Jarvis v. Wellman,* 52 F.3d 125, 126 (6th Cir.1995) (cited in *Crawford v. Manion*, 1997 WL 148066, at *1 (S.D.N.Y. Mar. 31, 1997), for the proposition that "release of medical records did not violate a fundamental Constitutional right")). Furthermore, HIPAA does not, itself, create a private right of action, but must instead be enforced by the Secretary of Health and Human Services or other authorized state authorities. 42 U.S.C. §§ 1320dd through 1320d-8; *Barnes v. Glennon*, 2006 WL 2811821, at *5-6 (N.D.N.Y. Sept. 28, 2006) ("No where does [HIPAA], either explicitly or implicitly, confer to private individuals a right of enforcement.").

facts supporting the statute of limitations defense are set forth in the papers that the plaintiff submits. *Messeroux v. Maimonides Medical Ctr.*, 2013 WL 2414690, at \*1 (E.D.N.Y. May 31, 2013) (citing *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980)); *see also Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (noting that, for purposes of an initial review under 28 U.S.C. § 1915, a court may find that a complaint is based on an indisputably meritless legal theory if an affirmative defense, such as the statute of limitations, "appears on the face of the complaint"). Accordingly, the Court will only consider the viability of claims pled with regard to the incident described to have occurred on January 8, 2012, as it is the only alleged incident contained in the Complaint that falls within the applicable statute of limitations period. All other claims should be **dismissed** as untimely.

### 3. January 8, 2012 Incident

With much of the claims in the Complaint being dismissed as untimely, the Court turns to the altercation that allegedly occurred on January 8, 2012, wherein several CNYPC employees used force against Plaintiff, while others observed the melee without intervening on his behalf. *See* Compl. at pp. 27-29. Mindful of the Second Circuit's requirement to liberally construe *pro se* pleadings, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), it appears that Plaintiff is claiming that Defendants Allen, Kunz, Parrish, and Hollenbeck used excessive force against him on January 8, 2012, and Defendants Farnum and Creaser-Smith failed to intervene and protect him from the assault. It further appears that Plaintiff claims that Defendant Allen, and possibly the other Defendants involved, acted in retaliation for Plaintiff's filing of the HIPAA complaint. And, based upon Exhibits attached to the Complaint and referenced therein, it further appears that Plaintiff is attempting to hold Defendants Hogan, Nowicki, Gonzalez, and Sawyer liable

to him in their supervisory capacities because they failed to properly train and supervise their staff

and were either aware of the "pattern" of abuse at CNYPC and did nothing about it, and/or, after

being made aware of the particular abuse Plaintiff suffered, failed to remedy or prevent further harm.

The Court finds that the Complaint alleges enough to warrant a responsive pleading from

Defendants Allen, Kunz, Parrish, Creaser Smith, Hollenbeck, Farnum, Hogan, Nowicki, Gonzalez,

and Sawyer with regard to Plaintiff's First and Fourteenth Amendment claims of excessive force,

retaliation, and failure to train, supervise, and/or protect. In so ruling, the Court expresses no

opinion as to whether Plaintiff's claims can withstand a properly filed dispositive motion.

### C. Motion for Injunctive Relief

Plaintiff has filed a Motion for a Preliminary Injunction and Temporary Restraining Order

asking the Court to transfer him from CNYPC to the Manhattan Psychiatric Center because of the

pattern of "psychiatric abuse" and physical assaults that he has endured at the hands of CNYPC

staff. Dkt. No. 3. In support of his Motion, Plaintiff reiterates many of the facts included in his

Complaint, as well as some additional allegations not included therein.[9]

The Second Circuit has stated that "[a] party seeking injunctive relief ordinarily must show:

(a) that it will suffer irreparable harm in the absence of an injunction and (b) either (i) a likelihood

of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair

ground for litigation and a balance of hardship tipping decidedly in the movant's favor." *Tom

Doherty Assoc., Inc. v. Saban Entm't,m Inc.*, 60 F.3d 27, 33 (2d Cir. 1995). "Such relief . . . is an

---

[9] In particular, in his Motion for Injunctive Relief, Plaintiff discusses an alleged "act of retaliation" by Defendant SCTA Daniel Wigginton on April 8, 2013. Dkt. No. 3, Charles Brooks Aff., undated, at ¶ 9. The Court notes that this allegation shall not be construed to be a part of the Complaint. Should Plaintiff seek to have these acts of retaliation become a part of this action, he would need to amend his complaint in accordance with the Federal Rules of Civil Procedure.

extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc* ., 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Id*. (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992)). Furthermore, "[a] decision to grant or deny a preliminary injunction is committed to the discretion of the district court." *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir. 1994).

### 1. Irreparable Harm

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction[.]" *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir. 1983) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure, § 2948 at 431 (1st ed.1973)). "[T]he moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990). In this regard, "the movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc*., 51 F.3d 328, 332 (2d Cir. 1995) (internal quotation marks and citation omitted). "In the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1998) (citations omitted).

In this case, Brooks alleges that he has in the past been the victim of staff harassment and assault and unless he is transferred to another psychiatric facility, he will face future harassment and

assaults. "The irreparable harm necessary to support injunctive relief must be 'actual and imminent,' not 'remote [or] speculative.'" *Young-Flynn v. Wright*, 2007 WL 241332, at *7 (S.D.N.Y. Jan. 26, 2007) (quoting *Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999)). Allegations of future injury without more do not establish a real threat of injury. *Gibson v. Walker*, 95-CV-1649, (N.D.N.Y. Dec. 7, 1995) (DiBianco, M.J.) (citing *Garcia v. Arevalo*, 1994 WL 383238 (S.D.N.Y. June 27, 1994)). Indeed, even if Plaintiff could establish that he suffered physical and psychological harm from staff at CNYPC in the past, a court "may not rest a finding of likelihood of future harm . . . based solely on past, illegal conduct." *Garcia v. Arevala*, 1994 WL 383238, at *2 (citing, *inter alia*, *City of Los Angelos v. Lyons*, 461 U.S. 95, 106 (1983). Because Brooks relies upon speculation to assert that he will be subjected to future assaults, he has failed to establish irreparable harm. And because he fails to establish this first prong, we need not consider whether he established either a likelihood of success on the merits or sufficiently serious questions going to the merits. Accordingly, the Court recommends **denying** Plaintiff's request for preliminary injunctive relief.

### D. Motion for Appointment of Counsel

Lastly, we turn to Plaintiff's request for appointment of counsel. Dkt. No. 4. In *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion. In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination. *Terminate Control Corp. v. Horowitz*, 28 F.3d at 1341 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). Of these criteria, the most important is the

merits, *i.e.*, "whether the indigent's position was likely to be of substance." *McDowell v. State of New York*, 1991 WL 177271, at \*1 (S.D.N.Y. Sept. 3, 1991) (quoting *Cooper v. A. Sargenti & Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989)). Indigents do not have to demonstrate that they can win their cases without the aid of counsel; they do have to show likely merit. *Id.*

This action was only recently commenced. Defendants have not yet responded to the allegations contained in Plaintiff's Complaint, and the only facts upon which this Court may base its decision as to whether this lawsuit is of substance are those portions of Plaintiff's Complaint wherein he states the facts surrounding his claim. Where a plaintiff does not provide a court with evidence, as opposed to mere allegations, relating to his or her claims, such party does not meet the first requirement imposed by the Second Circuit relative to applications seeking appointment of *pro bono* counsel. *See Harmon v. Runyon*, 1997 WL 118379 (S.D.N.Y. Mar. 17, 1997).

In light of the foregoing, the Court **denies** Plaintiff's Motion for Appointment of Counsel **without prejudice**. After Defendants have responded to the allegations in Plaintiff's Complaint, Plaintiff may choose to file a new motion for appointment of counsel, at which time the Court might be better able to determine whether such appointment is warranted in this lawsuit. Plaintiff is advised that any future motion for appointment of counsel must be accompanied by documentation that substantiates Plaintiff's efforts to obtain counsel from the public and private sector.

### III.  CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED**, that Plaintiff's Motion for *In Forma Pauperis* (Dkt. No. 2) is **GRANTED**;[10] and it is further

**RECOMMENDED**, that Plaintiff's Complaint be partially **DISMISSED**, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), as to any claims that do not fall within the applicable three-year statute of limitations and that Defendants Richard Miraglia, Terri Maxymillian, Kyle Velte, Charmain Bill, Jennifer Yemma, Antonia Bell, and Daniel Wigginton, be **DISMISSED** from this action due to Plaintiff's failure to state a claim for relief against them; and it is further

**RECOMMENDED**, that Defendants Jerome Allen, Hans Kunz, David Parrish, Laura Creaser-Smith, Nicholas Hollenbeck, Elizabeth Farnum, Michael Hogan, Jeff Nowicki, Anthony Gonzalez, and Donald Sawyer be directed to respond to the Complaint, in accordance with the Federal Rules of Civil Procedure, with regard to Plaintiff's First and Fourteenth Amendment claims of excessive force, retaliation, and failure to train, supervise, and/or protect; and it is further

**RECOMMENDED**, that Plaintiff's Motion for a Preliminary Injunction (Dkt. No. 3) be **DENIED**; and it is further

**ORDERED**, that Plaintiff's Motion for Appointment of Counsel (Dkt. No. 4) is **DENIED** without prejudice; and it is further

**ORDERED**, that if the above recommendations are adopted by the District Judge, the Clerk shall be directed to issue Summonses for those remaining Defendants and forward them, along with

---

[10] Plaintiff should note that although his Application to Proceed *In Forma Pauperis* has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

copies of the Complaint, to the United States Marshal for service upon the Defendants. The Clerk

shall also be directed to forward a copy of the Summons and Complaint by mail to the Office of the

Attorney General for the State of New York, together with a copy of this Report-Recommendation

and Order and any order issued by the District Judge on these recommendations; and it is further

**ORDERED**, that all pleadings, motions and other documents relating to this action must

bear the case number assigned to this action and be filed with the Clerk of the United States District

Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse,

New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be**

**accompanied by a certificate showing that a true and correct copy of it was mailed to all**

**opposing parties or their counsel. Any document received by the Clerk or the Court which**

**does not include a proper certificate of service will be returned, without processing.** Plaintiff

must comply with requests by the Clerk's Office for any documents that are necessary to maintain

this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in

filing motions, which must be returnable before the assigned Magistrate Judge with proper

allowance for notice as required by the Rules. **Plaintiff is also required to promptly notify the**

**Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure**

**to do so will result in the dismissal of this action.** All motions will be decided on submitted

papers without oral argument unless otherwise ordered by the Court; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file

written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   January 13, 2015
      Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge