UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CHARLES BROOKS,

                    Plaintiff,

          -against-                                   9:14-cv-0477 (LEK/DJS)

MICHAEL HOGAN, *et al.*,

                    Defendants.

---

## DECISION and ORDER

### I.    INTRODUCTION

This matter returns before the Court for an initial review of *pro se* Plaintiff Charles Brooks'

("Plaintiff") November 2009 and March 14, 2011 claims pursuant to 28 U.S.C. § 1915(e).  Dkt. No.

1 ("Complaint").  Also before the Court are Motions to dismiss Plaintiff's retaliation claim and to

dismiss Plaintiff's claims against supervisory officials.  Dkt. Nos. 42 ("CNYPC Motion"); 42-1

("CNYPC Memorandum"); 47 ("Kunz and Farnum Motion"); 47-1 ("Kunz and Farnum

Memorandum"); 60 ("Smith-Creaser Motion"); 60-1 ("Smith-Creaser Memorandum").  For the

following reasons, the CNYPC Motion is granted in part and denied in part, and the Kunz and

Farnum and Smith-Creaser Motions are both granted.

### II.    BACKGROUND

#### A.  Procedural History

Plaintiff is involuntarily confined at Central New York Psychiatric Center ("CNYPC").

Compl. ¶ 1.  Plaintiff commenced this action under 42 U.S.C. § 1983 on April 25, 2014, alleging

verbal abuse and harassment, disclosure of private medical information, and physical assault by

CNYPC staff.  Compl.  Plaintiff applied to proceed with the action *in forma pauperis*.  Dkt. No. 2.

In a Report-Recommendation filed on January 13, 2015, United State Magistrate Judge Randolph F. Treece granted Plaintiff's application to proceed *in forma pauperis* and conducted an initial review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e). Dkt. No. 13 ("Report-Recommendation"). Judge Treece recommended that any claims in the Complaint based on allegations occurring before April 18, 2011 be dismissed as untimely. Id. at 6-8. However, Judge Treece recommended that Defendants be ordered to respond to Plaintiff's excessive force, retaliation, and failure to train, supervise, and/or protect arising from an alleged assault on January 8, 2012. Id. at 8-9. On February 23, 2015, the Court adopted the Report-Recommendation in its entirety. Dkt. No. 17 ("February Order").

On May 15, 2015, Defendants Jerome Allen ("Allen"), Anthony Gonzalez ("Gonzalez"), Michael Hogan ("Hogan"), Nicholas Hollenbeck ("Hollenbeck"), Jeff Nowicki ("Nowicki"), David Parrish ("Parrish"), and Donald Sawyer ("Sawyer") filed a Motion to dismiss; on May 27, 2015, Defendants Elizabeth Farnum ("Farnum") and Hans Kunz ("Kunz") filed a Motion to dismiss; and on July 31, 2015, Defendant Laura Smith-Creaser ("Smith-Creaser") filed a Motion to dismiss. CNYPC Mot.; Kunz and Farnum Mot.; Smith-Creaser Mot.[1] On March 31, 2015, Plaintiff moved for reconsideration of the February Order adopting the Report-Recommendation. Dkt. No. 28 ("Reconsideration Motion").

In a Decision and Order dated March 16, 2016, the Court granted in part Plaintiff's Motion for reconsideration. Dkt. No. 65 ("March Order"). Specifically, the Court held that Plaintiff had

---

[1] Kunz, Farnum, and Smith-Creaser had not appeared or been served with process when the CNYPC Motion was filed; however, those Defendants fully join the arguments contained in the earlier Motions. Farnum and Kunz Mem. at 1 n.1; Smith-Creaser Mem. at 1 n.1. The Motions raise substantially the same arguments.

adequately pleaded exhaustion of remedies as to his allegations of medical record disclosure by

Jennifer Yemma ("Yemma"), Antonia Bell ("Bell"), and Allen sometime in November 2009 and

medical record disclosure by Kyle Velte ("Velte") on March 14, 2014. Id. at 3-4. Therefore, the

Court found that it erred in adopting the recommendation that those claims be dismissed as

untimely. Id. at 4-5. The Decision and Order instructed that the two new surviving claims would be

subject to review under 28 U.S.C. § 1915(e). Id. at 5.[2]

**B. Factual Allegations**

*1. Medical Records Disclosure*

In November 2009, Plaintiff observed Yemma, Bell, and Allen, who are each Secure Care

Treatment Assistants ("SCTA"), seated in the hallway near the nurses' station reading aloud the

contents of a medical chart. Compl. ¶ 37. Residents and other CNYPC employees were present.

Id. Plaintiff loudly stated "[your're] not suppose[d] to have someone's chart in the hallway; does

the nurse know you have that chart?" Id. At this, Yemma hurried into the nurses' station with the

chart in order to return it. Id.

Plaintiff later learned from Dr. Aranda that certain of Plaintiff's medical records had been

discovered in another resident's file, who was also named Brooks, and had been inadvertently

disclosed to that resident. Id. Plaintiff believes that his records were accidentally put in the other

resident's file when he observed the SCTAs reading aloud in November 2009. Id. Plaintiff first

filed a grievance regarding the SCTAs disclosure of his medical records with Treatment Team

---

[2] The March Order directed the Clerk of the Court to refer the action to United States
Magistrate Judge Daniel J. Stewart for initial review of the November 2009 and March 14, 2011
claims pursuant to 28 U.S.C. § 1915(e). Mar. Order at 5. However, for the purpose of judicial
economy the Court will conduct the initial review of the November 2009 and March 14, 2011
claims in this Decision and Order addressing Defendants' Motions to dismiss.

Leader Charmaine Bill in November 2009.  Id. ¶ 25.

Plaintiff also alleges that on March 14, 2011, Velte, a psychologist at CNYPC, disclosed

Plaintiff's private and confidential information in a clinical group meeting, at which at least seven

other residents were present.  Id. ¶¶ 31, 39.  Plaintiff filed a complaint regarding the incident on

March 14, 2011.  Id. ¶ 31.

On May 4, 2011, Plaintiff received a letter from Associate Commissioner Richard P.

Miraglia, denying Plaintiff's grievances for the two incidents of Health Insurance Portability and

Accountability Act of 1996 ("HIPAA") violations.  Id. ¶ 32.

### 2. January 8, 2012 Incident

On January 8, 2012, Plaintiff was seated in the eating area with another resident when Allen

yelled at Plaintiff to leave the other resident alone.  Compl. ¶ 42.  A verbal confrontation between

Plaintiff and Allen ensued, in which Plaintiff informed the entire eating area that Allen was

targeting him because of the HIPAA complaint Plaintiff had filed against Allen on August 16, 2010.

Id.  Allen then ordered Plaintiff to go to the Seclusion/Restraint Room ("Seclusion Room").  Id.  As

they entered the hallway, Allen asked Plaintiff why he had included Allen in the HIPAA complaint.

Id.  Allen, Kunz, and Parrish escorted Plaintiff to the Seclusion Room and returned to the eating

area.  Id.

Later, Allen, Kunz, and Parrish returned, and Allen punched Plaintiff in the face.  Id.  Allen

and Kunz tackled Plaintiff to the floor and assaulted him.  Id.  Plaintiff observed Smith-Creaser, a

nurse, outside the Seclusion Room and called for assistance.  Id.  Smith-Creaser dropped the Red

Dot phone and additional staff responded, including Hollenbeck, who allegedly placed his knee on

Plaintiff's chest and began choking him.  Id.  The SCTAs then forced Plaintiff into a five point

4

restraint bed.  Id.  Plaintiff observed Smith-Creaser and Dr. Farnum outside the Seclusion Room,

watching the assault take place.  Id.

## III.    DISCUSSION

### A.  Initial Screening

#### 1. Legal Standard

Section 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court

shall dismiss the case at any time if the court determines that . . . (B) the action . . . (i) is frivolous or

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief

against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[3]  Thus, even if a

plaintiff meets the financial criteria to commence an action *in forma pauperis*, it is the court's

responsibility to determine whether the plaintiff may properly maintain the complaint before the

court may permit the plaintiff to proceed with the action *in forma pauperis*.  See id.

A court has a duty to show liberality towards *pro se* litigants,  Nance v. Kelly, 912 F.2d 605,

606 (2d Cir. 1990), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a

pro se complaint before the adverse party has been served and both parties (but particularly the

plaintiff) have had an opportunity to respond," Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir.

1983) (internal citations omitted).  Therefore, a court should not dismiss a complaint if the plaintiff

has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court

---

[3] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).

to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009).

*2. Analysis*

Liberally construed, Plaintiff asserts claims for violations of his right to confidentiality under the Fourteenth Amendment and HIPAA based on the disclosure of his private medical information by Defendants Yemma, Bell, and Allen in November 2009 and by Defendant Velte on March 14, 2011. See Compl. ¶¶ 37, 39.

"The Fourteenth Amendment's Due Process Clause protects an inmate from the unwanted disclosure of information pertaining to an inmate's health." Davidson v. Desai, 817 F. Supp. 2d 166, 191 (W.D.N.Y. 2011) (citing Doe v. City of New York, 15 F.3d 264, 267 (2d Cir. 1994)). However, "the interest in the privacy of medical information will vary with the condition." Powell v. Schriver, 175 F.3d 107, 111 (2d Cir. 1999). "Confidential medical conditions are those that are 'excruciatingly private and intimate [in] nature' such as those 'likely to provoke . . . an intense desire to preserve one's medical confidentiality.'" Matson v. Bd. of Educ. of City Sch. Dist. of New York, 631 F.3d 57, 64 (2d Cir. 2011) (alterations in original) (quoting Powell, 175 F.3d at 111). When an inmate does have a confidentiality interest in a condition, "[p]rison officials can impinge

6

on that right only to the extent that their actions are 'reasonably related to legitimate penological interests.'" Powell, 175 F.3d at 112. "[T]he gratuitous disclosure of an inmate's confidential medical information as humor or gossip . . . is *not* reasonably related to a legitimate penological interest." Id.

Here, Plaintiff alleges that Yemma, Bell, Allen, and Velte disclosed his confidential medical information in an effort to harass him. Compl. ¶¶ 37, 39. However, Plaintiff does not allege that his medical records contained information of a sensitive nature. Indeed, while Plaintiff alleges that the information was disclosed in order to create a hostile environment towards him, Plaintiff makes no allegations as to the contents of the disclosed information. Compl. ¶¶ 37, 39. Plaintiff's Exhibits indicate that his ex-girlfriend and sister's addresses were disclosed, in addition to his prescription medications. Dkt. No. 1-1 ("Exhibits") at 5.[4] Plaintiff does not have a confidentiality interest in this information. See Davidson, 817 F. Supp. 2d at 192 (holding that the plaintiff did not state a Fourteenth Amendment privacy claim where he did not allege an unusual or sensitive condition); Webb v. Goldstein, 117 F. Supp. 2d 289, 298 (E.D.N.Y. 2000) (holding that the plaintiff did not state a privacy claim where he merely alleged that "his records contained mental health information and the fact that he was tested for HIV"). Thus, Plaintiff's Fourteenth Amendment due process claims based on the disclosure of medical information in November 2009 and on March 14, 2011 are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

Furthermore, to the extent Plaintiff seeks to state a claim under HIPAA, that claim is also subject to dismissal. As noted in the Report-Recommendation, HIPAA does not create a private

---

[4] The pagination corresponds to the page numbers assigned by ECF.

right of action. Rep.-Rec. at 7 n.8 (citing <u>Barnes v. Glennon</u>, No. 05-CV-0153, 2006 WL 2811821, at *5-6 (N.D.N.Y. Sept. 28, 2006)). Accordingly, Plaintiff's HIPAA claim is dismissed subject to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

**B. Motions to Dismiss**

Defendants move to dismiss Plaintiff's claim that he was assaulted on January 8, 2012 in retaliation for filing a HIPAA complaint on August 16, 2010. CNYPC Mem.; Farnum and Kunz Mem.; Smith-Creaser Mem. Defendants Hogan, Sawyer, Nowicki, and Gonzalez also move to dismiss all claims against them on account of Plaintiff's failure to allege that they were personally involved in the January assault. CNYPC Mem.

*1. Legal Standard*

To survive a motion to dismiss pursuant to Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570); <u>see also</u> FED. R. CIV. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in the plaintiff's favor. <u>See</u> <u>Allaire Corp. v. Okumus</u>, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." <u>Id.</u> at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

8

*2. Retaliation*

In order to state a First Amendment retaliation claim, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (quoting Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001)).

Plaintiff alleges that Allen was targeting him and assaulted him on January 8, 2012 because of a HIPAA complaint that Plaintiff had filed against Allen on August 16, 2010. Compl. ¶ 42. Defendants assert that Plaintiff has failed to plausibly allege a causal connection between his protected speech activity on August 16, 2010, and the assault on January 8, 2012. CNYPC Mem. at 7-8. Defendants further argue that except as to Allen, Plaintiff has failed to allege facts supporting an inference that the remaining Defendants were aware of Plaintiff's complaint and retaliated against him on account of it. Id. at 8; Farnum and Kunz Mem. at 5; Smith-Creaser Mem. at 5.

As to the Defendants other than Allen, the Court finds that Defendants' arguments are well-placed. Plaintiff alleges no facts suggesting that any of the other Defendants were aware of Plaintiff's HIPAA complaint. See Roseboro v. Gillespie, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011). Furthermore, Allen was the only Defendant named in the referenced HIPAA complaint. Compl. ¶¶ 25-26. "As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant." Hare v. Hayden, No. 09 Civ. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011). Finally, there was a one-and-a-half year delay between Plaintiff's protected activity and the adverse action. Munoz-Feliciano v. Monroe-Woodbury Cent. Sch. Dist., No. 13-CV-4340, 2015 WL 1379702, at *7 (S.D.N.Y. Mar. 25, 2015) ("Without more, the

approximately one-year—or longer—gap between the [protected activity] and the Defendants' first alleged instance of retaliatory conduct . . . does not support an inference of causation."). Therefore, Plaintiff's retaliation claims against all Defendants other than Allen are dismissed.

However, as to Allen, the Court finds that Plaintiff has alleged sufficient facts to support an inference of causation. Plaintiff alleges that he informed Allen on January 8, 2012, that he had named him in a HIPAA complaint and that Allen asked Plaintiff why he had included him in the complaint. Compl. ¶ 42. Allen subsequently assaulted Plaintiff. Id. Although there was an one-and-a-half year delay between the filing of the complaint and the assault, drawing all inferences in Plaintiff's favor, Allen only became aware of the HIPAA complaint on the date of the assault when Plaintiff mentioned it to him. Accordingly, mindful of its duty to construe *pro se* pleadings liberally, Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that Plaintiff's retaliation claim against Allen survives Defendants' Motion to dismiss.

### 3. Supervisory Officials

Defendants Hogan, Sawyer, Nowicki, and Gonzalez move to dismiss all claims against them on the ground that Plaintiff has failed to sufficiently allege that they were personally involved in the events of January 8, 2012. CNYPC Mem. at 3-6. Plaintiff alleges that Hogan is the Commissioner of the Office of Mental Health ("OMH"), Sawyer is the Executive Director of CNYPC, Nowicki is the Chief of Service at CNYPC, and Gonzalez is the Director of Risk Management at CNYPC. Compl. ¶¶ 46, 48, 49, 52. Plaintiff asserts that he filed a complaint regarding the January 8, 2012 assault with Gonzalez and Nowicki on March 12, 2012. Id. ¶ 34. Plaintiff subsequently appealed Nowicki's denial of his complaint to Hogan. Id. ¶ 35. On October 2, 2012, Plaintiff received a letter stating that Plaintiff's claims had been found to be unsupported and advising him that his

10

complaint was closed.  Id.

If a defendant is a supervisory official, a mere "linkage" to the unlawful conduct through

"the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to

show his or her personal involvement in that unlawful conduct.  See Polk Cty. v. Dodson, 454 U.S.

312, 325 (1981); Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003); Wright, 21 F.3d at 501.

In other words, supervisory officials may not be held liable merely because they held a position of

authority.  Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  Rather, supervisory personnel may be

considered "personally involved" only if they (1) directly participated in the alleged constitutional

violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3)

created, or allowed to continue, a policy or custom under which the violation occurred, (4) were

grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate

indifference to the rights of inmates by failing to act on information indicating that the violation was

occurring.  Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d

319, 323-24 (2d Cir. 1986)).

Plaintiff's allegations against Sawyer are limited to his supervisory role at CNYPC;

accordingly, Plaintiff has failed to show that Sawyer was personally involved in the events of

January 8, 2012 and Plaintiff's claims against him are dismissed.  As to Gonzalez, Nowicki, and

Hogan, Plaintiff alleges that those officials denied his grievance and appeal regarding the January 8,

2012 incident.  Compl. ¶¶ 34-35.  A supervisory official who denies a grievance may be found to be

personally involved in failing to remedy the situation.  Harnett v. Barr, 538 F. Supp. 2d 511, 524

(N.D.N.Y. 2008).  However, "[i]f the official is confronted with a violation that has already

occurred and is not ongoing, then the official will not be found responsible for failing to 'remedy' a

11

violation." Id.; see also Burton v. Lynch, 664 F. Supp. 2d 349, 360 (S.D.N.Y. 2009) (stating that "many courts in this Circuit . . . have held that an alleged constitutional violation complained of in a grievance must be 'ongoing' in order to find personal involvement"); Vega v. Artus, 610 F. Supp. 2d 185, 199 (N.D.N.Y. 2009) (finding that supervisory official's review of grievance concerning conduct that was not ongoing did not establish personal involvement). Because Plaintiff's grievance related to conduct that was not ongoing, Gonzalez, Nowicki, and Hogan's review of that grievance is not sufficient to establish those officials' personal involvement. Accordingly, Plaintiff's claims against those officials are also dismissed.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's claims for disclosure of medical records in November 2009 and on March 14, 2011 are **DISMISSED** pursuant to 28 U.S.C. § 1915(e); and it is further

**ORDERED**, that Defendants Jerome Allen, David Parrish, Nicholas Hollenbeck, Michael Hogan, Donald Sawyer, Jeff Nowicki, and Anthony Gonzalez's Motion (Dkt. No. 42) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED**, that Defendants Hogan, Sawyer, Nowicki, and Gonzalez are **DISMISSED** as Defendants in this action; and it is further

**ORDERED**, that Defendants Hans Kunz and Elizabeth Farnum's Motion (Dkt. No. 47) to dismiss is **GRANTED**; and it is further

**ORDERED**, that Defendant Laura Smith-Creaser's Motion (Dkt. No. 60) to dismiss is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on all

parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      March 31, 2016
                Albany, NY

Lawrence E. Kahn
U.S. District Judge