UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CHARLES BROOKS,

                Plaintiff,

  -against-                                          9:14-CV-0477 (LEK/DJS)

MICHAEL HOGAN, *et al.*,

                Defendants.

## DECISION AND ORDER

**I.    INTRODUCTION**

Presently before the Court is pro se Plaintiff Charles Brooks's Motion for Reconsideration of the Court's Decision and Order dated March 31, 2016. Dkt. Nos. 67 ("March Order"), 73 ("Motion"). Plaintiff also filed a supplemental memorandum in support of the Motion for Reconsideration, including several exhibits. Dkt. Nos. 77 ("Supplemental Memorandum"), 78 ("Supplemental Exhibits"). Defendants submitted a response to the Motion and the Supplemental Memorandum, Dkt. No. 79 ("Opposition"), and Brooks filed a reply, Dkt. No. 81 ("Reply"). For the following reasons, the Motion is denied.

**II.    BACKGROUND**

The Court assumes the parties' familiarity with the facts and history of this case and recites only those facts necessary to the resolution of the pending Motion. Brooks is involuntarily confined at Central New York Psychiatric Center ("CNYPC"), and he commenced this action under 42 U.S.C. § 1983 alleging multiple constitutional violations arising out of his confinement. Compl. ¶ 38. Defendants filed three separate motions to dismiss, which addressed some, but not all, of Brooks's claims. Dkt. Nos. 42, 47, 60 ("Motions to Dismiss"). The March Order—which

Brooks now asks the Court to reconsider—addressed two sets of claims: (1) Fourteenth Amendment due process claims against multiple defendants for unauthorized disclosure of Brooks's private medical records, and (2) First Amendment retaliation claims alleging that multiple defendants retaliated against Brooks after he filed a complaint under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").[1] March Order at 6, 9. The Court dismissed Brooks's Fourteenth Amendment due process claims against all defendants, and it dismissed his First Amendment retaliation claims against all but one defendant. Id. at 8, 10, 12.

On May 4, 2016, Brooks filed the present Motion for Reconsideration of the Court's March Order. Mot. Brooks does not specify the legal authority under which he moves for reconsideration, but under Federal Rule of Civil Procedure 54(b) federal district courts retain the right to reconsider an interlocutory order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); see also Scott v. Chipotle Mexican Grill, Inc., 103 F. Supp. 3d 542, 545 (S.D.N.Y. 2015) ("The district court . . . 'is vested with the power to revisit its decisions before the entry of final judgment . . . .'" (quoting Transaero, Inc. v. La Fuerza Aerea Boliviana, 99 F.3d 538, 541 (2d Cir. 1996))). Because the March Order is interlocutory, Rule 54(b) is the only appropriate basis for reconsideration.

In this district, Local Rule 7.1(g) sets the deadline to file a motion for reconsideration of an interlocutory order: "[A] party may file and serve a motion for reconsideration or reargument

---

[1] It is not clear where or when Brooks filed this complaint, but he sent copies to several of the CNYPC supervisors who were named as defendants in this action. Compl. ¶ 37.

no later than FOURTEEN DAYS after the entry of the challenged judgment, order, or decree." Here, Brooks's Motion was filed more than fourteen days after the March Order, and it is therefore untimely under Local Rule 7.1(g). Nevertheless, in light of Brooks's pro se status, the Court will consider the merits of the Motion.

### III. LEGAL STANDARD

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Thus, reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." Id. Accordingly, a court should generally refrain from revising its earlier decisions "unless there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (quoting Virgin Atl. Airways v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)).

### IV. DISCUSSION

**A. The Motion**

In his Motion, Brooks advances three different arguments for reconsideration: (1) the Court "erred by wrongly interpreting the facts [and] absolv[ing] the defendants of their misconduct," (2) the Court mistakenly ignored and dismissed Brooks's First Amendment retaliation claims, and (3) the Court failed to acknowledge Brooks's due process claim. Mot. at 2, 7, 17.

3

Brooks's first argument refers to an incident on January 8, 2012, in which he was allegedly physically assaulted by CNYPC staff members. Compl. ¶ 42. In a January 13, 2015 Report-Recommendation reviewing the Complaint under 28 U.S.C. § 1915(e), U.S. Magistrate Judge Randolph F. Treece recognized several potential claims arising out of the events that occurred on January 8, 2012. Dkt. No. 17 ("Report-Recommendation") at 8–9. Specifically, Judge Treece found that the Complaint required a response to the following claims related to the January 8, 2012 incident[2]: excessive use of force as to defendants Allen, Kunz, Parrish, and Hollenbeck; failure to intervene and protect as to defendants Farnum and Creaser-Smith; retaliation against each of those defendants, as their actions may have been in response to Brooks's HIPAA complaint; and failure to train and supervise as to defendants Hogan, Nowicki, Gonzalez, and Sawyer (the "Supervisory Defendants"). Id. In the March Order, the Court dismissed all claims against the Supervisory Defendants and dismissed the retaliation claims against all Defendants, except for Allen. March Order at 12.

Brooks appears to misunderstand the result of the March Order. He argues at length that defendants Allen and Creaser-Smith should not be "absolved of their misconduct" on January 8, 2012, Mot. at 4–7, but, as Defendants acknowledge in their Opposition, the majority of the claims against those defendants have not been dismissed, Opp'n at 2–3. In particular, excessive use of force claims as to defendants Allen, Kunz, Parrish, and Hollenbeck, and failure to

---

[2] The Report-Recommendation dismissed Brooks's claims about all other incidents alleged in the Complaint as barred by the statute of limitations. Rep.-Rec. at 6–8. Although the Report-Recommendation was later adopted in full, Dkt. No. 17, Brooks filed a motion for reconsideration, Dkt. No. 28, which was granted in part, Dkt. No. 65 ("Reconsideration Order") at 5. In the Reconsideration Order, the Court found that claims related to two different incidents were not necessarily untimely. Id. at 3–4.

4

intervene and protect claims as to defendants Farnum and Creaser-Smith, were not dismissed. To the extent that Brooks is arguing that the claims against the Supervisory Defendants should not have been dismissed, he provides no basis for reconsideration.

Second, Brooks argues that the Court committed legal error by dismissing his First Amendment retaliation claims. Mot. at 17. Brooks describes four instances of retaliation at length: (1) an incident on August 18, 2010, in which Bell allegedly harassed and assaulted Brooks, and he was placed in a seclusion room for twenty-four hours; (2) unethical behavior on the part of defendant Velte, one of Brooks's psychologists, on March 14, 2011; (3) a phase demotion and transfer that Brooks received on March 31, 2011; and (4) the alleged assault and subsequent disciplinary measures on January 8, 2012. Id. at 17–24.

As the Report-Recommendation made clear, any claims arising out of the incidents on August 18, 2011, and March 31, 2011, are barred by the statute of limitations. Rep.-Rec. at 6–8. The Court later found that Brooks's claims about the March 14, 2011 incident were equitably tolled because his grievance related to that incident was not resolved until May 4, 2011, less than three years before Brooks filed the Complaint in this case. Dkt. No. 65 ("Reconsideration Order") at 3–4. The statute of limitations for § 1983 claims is determined by the applicable state's "general or residual statute for personal injury actions," which is three years in New York. Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002); accord N.Y. C.P.L.R. § 214(5). Therefore, the retaliation claims arising out of the incidents on March 14, 2011, and January 8, 2012, are timely.

"To prove a First Amendment retaliation claim, 'a prisoner must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the

5

plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."'" Roseboro v. Gillespie, 791 F. Supp. 2d 353, 366 (S.D.N.Y. 2011) (quoting Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009)).

In the Complaint, Brooks alleges that on March 14, 2011, Velte engaged in "unethical conduct" that "cannot be viewed as supportive." Compl. ¶ 39. But it is not clear from the Complaint what exactly Velte did, or how he may have committed a HIPAA violation. Furthermore, even if Velte had committed a HIPPA violation, there is no indication that he was aware of any protected speech that Brooks had engaged in, or that he was retaliating against Brooks for that speech. Therefore, there is no basis in the Complaint for a First Amendment retaliation claim against Velte, and the Court will not now recognize such a claim for the first time on a motion for reconsideration.

As for the January 8, 2012 incident, the Court dismissed Brooks's retaliation claims for that incident against all defendants but Allen.³ March Order at 9–10. The Court pointed to several reasons why Brooks had not stated a claim of retaliation against the other defendants, including Brooks's failure to allege that those defendants were even aware of his HIPAA complaint. Id. at 9. Any defendants who were not aware of Brooks's protected speech could not have retaliated against him because of that speech. While Brooks now claims that all Defendants were aware of his complaint, he does not provide any evidence for that claim. Even if Brooks were to provide evidence at this stage, it would need to be evidence that was not previously available. Space

---

³ On this point, Brooks again seems confused about the result of the March Order. Brooks argues at length that Allen must be held responsible for his retaliatory conduct, but he ignores the fact that his retaliation claim against Allen survived the Motions to Dismiss. March Order at 10.

Hunters, Inc. v. United States, 500 F. App'x 76, 81 (2d Cir. 2012); see also NEM Re Receivables, LLC v. Fortress Re, Inc., 187 F. Supp. 3d 390, 396 (S.D.N.Y. 2016) ("A motion to reconsider is not petitioner's opportunity to put forward evidence that he could have, but failed, to provide the Court when the Court initially considered the motion."). As Brooks has failed to provide any evidence—let alone newly discovered evidence—reconsideration is not warranted.

Third, Brooks argues that the Court "erred by failing to acknowledge [his] due process claim." Mot. at 7. Brooks goes on to argue that the Court should have recognized—presumably in the Report-Recommendation on initial review—that his Complaint could be read to include due process claims in relation to at least three different events. Mot. at 9–11. But a motion for reconsideration is not the appropriate vehicle for such arguments. Under the Local Rules, any objection to the Report-Recommendation should have been made within fourteen days, L.R. 7.1(g), but Brooks did not include this particular argument in his timely filed objections, Dkt. No. 16 ("Objections"). Now—over two years after the Report-Recommendation was filed—is not the time for Brooks to raise new theories of his case. See Norton v. Town of Brookhaven, 47 F. Supp. 3d 152, 155 (E.D.N.Y. 2014) ("A party requesting reconsideration is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use [reconsideration] to advance new facts and theories in response to the court's rulings."); City of New York v. Venkataram, No. 06-CV-6578, 2009 WL 3321278, at *1 (S.D.N.Y. Oct. 7, 2009) ("[I]t is not appropriate to use a motion for reconsideration as a vehicle to advance new theories a party failed to articulate in arguing the underlying motion.").

### B. The Supplemental Memorandum

Twenty-two days after submitting his Motion for Reconsideration, Brooks filed the Supplemental Memorandum, which presented a new set of arguments for granting reconsideration of the March Order. Under the Local Rules, this was impermissible. Brooks did not ask for, or receive, the Court's permission to submit the Supplemental Memorandum. Nevertheless, in light of Brooks's pro se status, the Court will address the three arguments contained in the Supplemental Memorandum: (1) the Court erred in dismissing his Fourteenth Amendment due process claims regarding the disclosure of medical information, (2) the Court failed to recognize his stigma-plus and conditions of confinement claims, and (3) several defendants used excessive force against him during the January 8, 2012 altercation. Supplemental Mem. at 3, 5, 11, 13.

First, Brooks moves for reconsideration of the Court's dismissal of his Fourteenth Amendment due process claims about the unauthorized disclosure of his medical information in November 2009 and March 2011. Id. at 5. The Court dismissed those claims because it found that Brooks had failed to allege that the disclosed records "contained information of a sensitive nature." March Order at 7. Brooks insists that he specifically alleged that it was "'highly sensitive' . . . information of the most 'intimate kind.'" Supplemental Mem. at 5 (quoting Compl. ¶ 25). Therefore, Brooks argues, reconsideration is necessary to prevent clear error. Id.

"The Fourteenth Amendment's Due Process Clause protects an inmate from the unwanted disclosure of information pertaining to an inmate's health." Davidson v. Desai, 817 F. Supp. 2d 166, 191 (W.D.N.Y. 2011) (citing Doe v. City of New York, 15 F.3d 264, 267 (2d Cir. 1994)). This protection is based on the right to privacy, and it extends to prisoners insofar as it

does not interfere with legitimate penological objectives. Matson v. Bd. of Educ. of City Sch. Dist. of N.Y., 631 F.3d 57, 64–65 (2d Cir. 2011). But the protection against disclosure of medical records is not absolute; instead, it is considered on a case-by-case basis and depends on the medical condition at issue. Id. at 66–67.

"Privacy interests in medical information vary with the medical condition with certain 'unusual' conditions, including positive HIV status and transsexualism being 'likely to provoke both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others.'" Davidson, 817 F. Supp. 2d at 191–92 (quoting Powell v. Schriver, 175 F.3d 107, 111 (2d Cir. 1999)). Courts in this circuit have chosen not to extend Fourteenth Amendment protection to several other medical conditions. See Watson v. Wright, 08-CV-62, 2010 WL 55932, at *1 (N.D.N.Y. Jan. 5, 2010) ("This Court finds no basis in Powell and its progeny for holding that, in a prison setting, plaintiff's Hepatitis C condition is the type of condition that gives rise to constitutional protection."); Hamilton v. Smith, No. 06-CV-805, 2009 WL 3199531, at *15 & n.18 (N.D.N.Y. Jan. 13, 2009) (finding that a prisoner had no Fourteenth Amendment right to privacy regarding high blood pressure, high cholesterol, and Hepatitis A).

While Brooks claims that the disclosed medical information was "highly sensitive" information of "the most intimate kind," Compl. ¶ 25, he fails to allege what medical condition, if any, this information related to. The only specific disclosures that Brooks alleges are: (1) his ex-girlfriend's name, address, and phone number; (2) his personal medication (though he does not say what the medication was); and (3) his sister's address. Dkt. No. 1-1 ("Exhibits") at 5.[4] As

---

[4] The cited page numbers for the Exhibits correspond to those assigned by the Court's electronic filing system ("ECF").

the Court stated in the March Order, Brooks does not have a sufficient confidentiality interest in that information to support a Fourteenth Amendment claim. March Order at 7. Without providing more information about what medical information the alleged disclosures were related to, Brooks cannot state a Fourteenth Amendment claim for disclosure of medical information. See Davidson, 817 F. Supp. 2d at 192 (dismissing a Fourteenth Amendment claim for disclosure of medical information where the plaintiff had "not specified which of his medical conditions . . . was so 'unusual' that the disclosure . . . arose to a Fourteenth Amendment violation"); Webb v. Goldstein, 117 F. Supp. 2d 289, 298 (E.D.N.Y. 2000) (finding a prisoner's allegation that disclosed records "contained mental health information" and "the fact that he was tested for HIV" insufficient to support a Fourteenth Amendment claim).

Second, Brooks argues that the Court erred in failing to recognize his conditions-of-confinement and stigma-plus claims. Supplemental Mem. at 2, 11. But, as the Court stated above in relation to the due process claims raised for the first time in Brooks's Motion, a motion for reconsideration is not the time to raise new claims in his case. It is well settled that a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise 'taking a second bite at the apple.'" Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998)).

Third, Brooks argues that several defendants used excessive force against him during the January 8, 2012 altercation, and other defendants failed to intervene on his behalf. Supplemental Mem. at 13–24. On these points, Brooks again seems to misunderstand the result of the March Order. As Defendants state in the Opposition, they never moved to dismiss Brooks's excessive

10

force claims or his failure to protect claims. Opp'n at 8. Therefore, Brooks's excessive force claims as to defendants Allen, Kunz, Parrish, and Hollenbeck, and his failure to protect claims as to defendants Farnum and Creaser-Smith, will go forward.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion for Reconsideration (Dkt. No. 73) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   March 15, 2017
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge